UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORNELIUS OMAR BENNETT,<br><br>Plaintiff,<br><br>v.<br><br>ANHEUSER-BUSCH COMMERCIAL STRATEFY, LLC, a Delaware Limited Liability Company, et al.,<br><br>Defendants. | No. 2:22-cv-01239-MCE-KJN<br><br>**MEMORANDUM AND ORDER** |

Through this putative action, Plaintiff Cornelius Omar Bennett ("Plaintiff"), individually and on behalf of himself and all others similarly situated, seeks to recover from Defendants Anheuser-Busch Commercial Stratefy, LLC, and Anheuser-Busch, LLC, (collectively, "Defendants" or "AB") for various purported wage and hour violations. Presently before the Court is Defendants' Motion to Compel Individual Arbitration. ECF No. 17. For the following reasons, that Motion is GRANTED.[1]

///

///

///

---

[1] Because oral argument would not have been of material assistance, the Court ordered this matter submitted on the briefs. E.D. Local Rule 230(g).

1

# BACKGROUND[2]

Defendants are a wholesale distributor of beer, ale, porter, and other malt beverages around the world.  They have branches in many states, including California.

Plaintiff worked with Defendants from approximately November 16, 2020, until approximately May 13, 2021, totaling 178 days.  A few weeks prior to starting with Defendants, Plaintiff electronically signed an agreement to be bound by Defendants' "Dispute Resolution Program" ("DRP").  Decl. of Marjorie Yocum, ECF No. 17-6, Ex. 2.  That DRP stated, in pertinent part, that the employee and Defendants "[were] agreeing as a condition of your employment to submit all covered claims to the . . . DRP . . . , to waive all rights to a trial before a jury on such claims, and to accept an arbitrator's decision as the final, binding and exclusive determination of all covered claims."  Id., ECF No. 17-7, Ex. 3, at 1.  "The DRP applies to all salaried and non-union hourly employees of Anheuser-Busch Companies, Inc., or any of its U.S. subsidiaries ("Employee")."  Id. at 2.  "Covered claims are claims relating to or arising out of the employment relationship that:  A. the Company may have against an Employee, and/or B. the Employee may have against the Company and/or any individual employee who is acting within the scope of his or her employment with the Company, where the Employee alleges unlawful termination and/or unlawful or illegal conduct on the part of the Company."  Id. at 5.  It also provides that:

> The Arbitrator shall have exclusive authority to resolve any dispute relating to the applicability, enforceability, or formation of the DRP, including any claim that all or part of the DRP is invalid or unenforceable.

Id. at 16.

///

///

---

[2] Unless otherwise indicated, the following facts are taken, primarily verbatim, from the parties' briefs.

2

For his part, however, Plaintiff avers that:

> When I applied for a position with AB, I was required to complete an online onboarding process prior to my start date. In order to complete my onboarding, I was required to click a "Submit" button at the bottom of a webpage.
>
> This page displayed a list of document titles. I do not recall whether one of those list items referenced AB's Dispute Resolution policy ("DRP"). I do not recall any hyperlink on this page that linked to the DRP or any other documents. I was unable to view any of these documents through this web page at the time I accessed it.
>
> I was not given a copy of the DRP before clicking "Submit" or at any time during the onboarding process, nor was I given any instructions on how to access the DRP, or any other opportunity to review the terms of the DRP. I was also not given an opportunity to negotiate any of the terms of the DRP, or any other terms of my employment.
>
> After clicking the "Submit" button, my electronic signature was applied to the listed documents. I did not understand that by clicking the "Submit" button that my signature would be added to these documents, and I did not intend to agree to the terms of these documents, including the DRP, when I clicked the "Submit" button.
>
> After clicking the "Submit" button, I was able to review only the final signature page of the listed documents, which had been populated with my digital signature. I was unable to review any other portion of these documents before or after clicking the "Submit" button. I clicked the "Submit" button because it was my understanding that doing so was necessary to move to the next step in the onboarding process. I did not understand that I was being asked to agree to give up important rights by clicking the "Submit" button.
>
> I contacted HR via telephone and email to inquire about various issues with the onboarding process. One of the issues I contacted HR about was my inability to access the documents which had been populated with my electronic signature after I clicked the "Submit" button. I was told by HR that it was not an issue and I would have an opportunity to review and sign the documents when I arrived to start my employment with AB. I was never given this opportunity.
>
> I was never provided a copy of the DRP, nor was I told how to access the DRP, before or during my employment with AB. In fact, I do not recall ever seeing the DRP until AB's counsel provided it to me through my counsel in connection with AB's filing its first motion to compel arbitration, which I understand was filed on September 27, 2022.

Pl.'s Decl., ECF No. 21-1, ¶¶ 4-10.

Defendants, on the other hand, provide evidence that the DRP Acknowledgment page contained the words "Dispute Resolution Program ('DRP')" in blue, bold letters, and that was in actuality a hyperlink to the DRP itself. Decl. of Allison Russell, ECF No. 23-1, ¶¶ 7-9. Plaintiff also purportedly had access to all policies and procedures, including the DRP, throughout his employment with Defendants. Id., ¶ 11. For example, Plaintiff could purportedly access the DRP through Defendants' intranet page. Id., ¶¶ 11-12.

In addition, Plaintiff avers that "[u]pon starting [his] job with [Defendants], it was [his] understanding that paying dues to, and becoming a member of the Teamsters Local Union 896 was a requirement of the job." Pl.'s Decl., ECF No. 21-1, ¶ 11. He purportedly believed "at the time [he] was hired that only Union members were allowed to work on the property." Id. He further contends that:

> I recall signing my Union application and authorization to deduct Union dues from my paychecks during my new hire orientation on my first day of work in November 2020. It was my understanding that Union dues were to be deducted from my paychecks from the start of my employment. I am not aware of any reason why they were not.

Id., ¶12.

It is undisputed, however, that no union application is in the record other than one signed on February 17, 2021, when Plaintiff submitted an "Application for Membership and Dues Deduction Authorization," to the Teamsters Local Union No. 896 ("Union"). Id., ¶¶ 15-16, Ex. 3. In addition, on March 5, 2021, Defendants deducted Plaintiff's Union dues for the first time.

On May 3, 2022, Plaintiff initiated this putative class action in Solano County Superior Court, bringing various wage and hour claims, including challenges to Defendants' failure to provide meal and rest breaks. Defendants thereafter removed the case to this Court and filed the instant Motion.

///

///

4

# ANALYSIS

Defendants ask the Court to compel Plaintiff to individually arbitrate his claims pursuant to the terms of the DRP and to stay this action pending completion of those proceedings. In opposition, Plaintiff argues that there is no valid agreement to arbitrate because, as a union member, Plaintiff is not a covered employee. In addition, Plaintiff contends that there was no meeting of the minds because Plaintiff was not able to access the DRP either electronically or in hard copy when he started employment with Defendants and because they could not have reached an agreement when the DRP does not apply to union employees. Finally, Plaintiff contends that the DRP is unconscionable, in part because it purports to delegate the issue of arbitrability to the arbitrator.

In Reply, Defendants argue that the delegation clause is valid and that issues of applicability, formation, and enforceability of the DRP should be decided by the arbitrator as opposed to by the Court. Based on the delegation clause, the Court concludes that this case should proceed to arbitration.

The Federal Arbitration Act ("FAA") provides that "[a] written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Under the FAA, a party may seek a court order compelling arbitration where another party refuses to arbitrate. Id. § 4. Valid arbitration agreements must be "rigorously enforce[d]." Perry v. Thomas, 482 U.S. 483, 490 (1987) (internal quotation marks and citation omitted). To that end, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds, Inc. v. Byrd, 470 U.S. 213, 218 (1985).

///

1 "Section 2 [of the FAA] is a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state or substantive or procedural policies to the contrary." Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24 (1983). However, "the FAA's 'policy favoring arbitration' does not authorize federal courts to invent special, arbitration-preferring procedural rules." Morgan v. Sundance, Inc., 596 U.S. 411, 418 (2022) (quoting Moses H. Cone, 460 U.S. at 24). This policy "is merely an acknowledgement of the FAA's commitment to overrule the judiciary's longstanding refusal to enforce agreements to arbitrate and to place such agreements upon the same footing as other contracts." Granite Rock Co. v. Int'l Broth. of Teamsters, 561 U.S. 287, 302 (2010) (citation and internal quotation marks omitted). In other words, "[t]he policy is to make arbitration agreements as enforceable as other contracts, but not more so." Morgan, 596 U.S. at 418 (citation and internal quotation marks omitted); see also Gilmer v. Interstate/Johnson Lane Corp., 500 U.S. 20, 24–25 (1991) (stating that the FAA's "purpose was . . . to place arbitration agreements upon the same footing as other contracts," and recognizing a "liberal federal policy favoring arbitration agreements"). "[A] court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." Morgan, 596 U.S. at 418.

Generally, in deciding whether a dispute is subject to an arbitration agreement, a Court must answer two questions: (1) "whether a valid agreement to arbitrate exists," and, if so, (2) "whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). If a party seeking arbitration establishes these two factors, the Court must compel arbitration. 9 U.S.C. § 4; Chiron, 207 F.3d at 1130. Accordingly, the Court's role "is strictly limited to determining arbitrability and enforcing agreements to arbitrate, leaving the merits of the claim and any defenses to the arbitrator." Republic of Nicaragua v. Standard Fruit Co., 937 F.2d 469, 478 (9th Cir. 1991).

///

In some cases like this one, however, the relevant agreement contains a "delegation clause." Specifically here, the DRP purports to delegate to the arbitrator "exclusive authority to resolve any dispute relating to the applicability, enforceability, or formation of the DRP, including any claim that all or part of the DRP is invalid or unenforceable." ECF No. 17-7, Ex. 3.

"It is well-established that some 'gateway' issues pertaining to an arbitration agreement, such as issues of validity and arbitrability, can be delegated to an arbitrator by agreement." Ahlstrom v. DHI Mortg. Co., Ltd., L.P., 21 F.4th 631, 634 (9th Cir. 2021). However, "a court should order arbitration only if it is convinced an agreement has been formed." Id. at 635. "[P]arties cannot delegate issues of formation to the arbitrator." Id. "An agreement to arbitrate a gateway issue is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." Rent-A-Center, W., Inc. v. Jackson, 561 U.S. 63, 70, (2010).

Accordingly, to determine which forum has jurisdiction to evaluate these "gateway issues," the Court must first determine if an agreement to arbitrate and an agreement to delegate gateway issues exist.[3] "If the parties did form an agreement to arbitrate (and agreed to delegate questions of arbitrability), the Court must send any disputes between [them] to [the arbitrator]." Massel v. Successfulmatch.com, ___ F. Supp. 3d ____, 2024 WL 802194, at *4 (N.D. Cal. 2024). "But if the parties never formed such an agreement, [the Plaintiff's] claims cannot be compelled to arbitration and are properly before this Court." Id.

///
///
///
///

---

[3] In this case, Plaintiff's challenges to both formation of the DRP and formation of the delegation clause are the same so the Court will address those arguments simultaneously.

7

One caveat is that, if an agreement is found to exist, parties can still challenge the validity and enforceability of the delegation provision in court prior to being compelled to arbitration. See Goceri v. Amazon.com, Inc., ___ F.Supp.3d ____, 2024 WL 1007868, at *2 (N.D. Cal. 2024). "To challenge the validity or enforceability of a delegation provision, 'a party resisting arbitration must mention that it is challenging the delegation provision and make specific arguments.'" Id. (quoting Bielski v. Coinbase, Inc., 87 F.4th 1003, 1009 (9th Cir. 2023)). "If there is no delegation provision (or if one is successfully challenged), the Court must resolve the gateway questions." Id.

### A. The parties formed an agreement to arbitrate that included a delegation provision.

In determining the existence of an agreement to arbitrate, the district court looks to "general state-law principles of contract interpretation, while giving due regard to the federal policy in favor of arbitration." Wagner v. Stratton Oakmont, Inc., 83 F.3d 1046, 1049 (9th Cir. 1996). Plaintiff contends that Defendants failed to establish the existence of a valid arbitration agreement between them. The Court disagrees.

Defendants provided evidence that Plaintiff electronically acknowledged his assent to the DRP prior to commencing his employment. Yocum Decl., ECF No. 17-2, ¶¶ 5, 6, Ex. 2-3. Prior to signing that acknowledgment Plaintiff had access to a hyperlink taking him directly to the applicable DRP. Russell Decl., ECF No. 23-1, ¶¶ 7-8. In addition, the DRP was available to Plaintiff on Defendants' intranet page throughout his employment. Id., ¶¶ 11-12. In opposition, Plaintiff contends that he did not recall whether any documents provided to him during onboarding included the DRP, and he did not remember seeing any hyperlink. Bennett Decl., ECF No. 21-1, ¶¶ 5-6. He also indicated that he was never given a copy of the DRP and that he did not understand that clicking "submit" would sign various documents for him. Id., ¶¶ 7-8. Plaintiff's testimony as to his recollection and understanding is belied by the objective evidence indicating that he specifically signed the DRP acknowledgment form containing a hyperlink to the document at issue.

The Court thus concludes that the parties agreed to the terms of the DRP and that an agreement to arbitrate, including an agreement to abide by the delegation clause contained therein, was formed.[4]

### B. The delegation clause is not unconscionable.

Plaintiff contends that the DRP and the delegation clause are unconscionable because "the delegation provision (1) is not within the adhering party's reasonable expectations since arbitrators are not normally expected to determine their own jurisdiction, and (2) the delegation clause creates a conflict of interest for the arbitrator because (a) an arbitrator who finds an arbitration agreement unconscionable would not only have nothing further to arbitrate…and (b) could also reasonably expect to obtain less business in the future, at least from the provider in question." Pl.'s Opp. ECF No. 21, at 19-20 (quoting Chin v. Advanced Fresh Concepts Franchise Corp., 194 Cal. App. 4th 704, 710-11 (2011) (internal quotation marks omitted)).

Plaintiff's arguments are unpersuasive because the challenges he raises simply go to the inherent features of delegation clauses and were already rejected in Malone v. Superior Court, 226 Cal. App. 5th 1551 (2014). Indeed, that court evaluated whether the following arguments gave rise to substantive unconscionability:

> (1) a delegation clause is outside the reasonable expectation of the parties; (2) delegation clauses are not bilateral; and (3) the arbitrator has a self-interest in finding the agreement arbitrable--both so that the arbitrator can be compensated for arbitrating the dispute on the merits, and so that the arbitrator will be considered for further arbitration assignments.

///

///

///

///

///

---

[4] Whether or not Plaintiff was a union member throughout his employment with Defendants goes to whether his claims are covered, not whether an agreement was formed. If the arbitration provision stands, as discussed below, what claims are covered is an issue for resolution by the arbitrator.

Id. at 1564. It concluded that:

> [T]hese three grounds do not lead to the conclusion that the delegation clause in the instant matter is unconscionable. Taken in reverse order, the third ground (the arbitrator's financial self-interest) is preempted by the FAA; the second ground (the delegation clause lacks bilaterality) is simply inapplicable to the delegation clause in the instant case; and the first ground (the delegation clause is outside the reasonable expectation of the parties), standing alone, is not sufficient to render the clause unconscionable.

Id. Because Plaintiff here also raises only the first and third grounds to challenge application of the instant delegation provision, his arguments are squarely foreclosed. Id. The delegation provision is enforceable, and the parties must abide by its terms.

Defendants' Motion to Compel is thus GRANTED. Because the Court concludes the delegation clause is valid, it does not reach questions such as what claims may be covered by the DRP and whether the class waiver applies and is valid here. It stays this action pending resolution of the arbitration proceedings, at which point, the Court can determine whether there is anything further to adjudicate in this forum.

## CONCLUSION

Defendants' Motion to Compel (ECF No. 17) is GRANTED, and this action is hereby STAYED pending resolution of the parties' arbitration proceedings. Not later than sixty (60) days following the date this Memorandum and Order is electronically filed, and every sixty (60) days thereafter, the parties are directed to file a Joint Status Report advising the Court as to the status of those proceedings.

IT IS SO ORDERED.

Dated: March 21, 2024

_____
MORRISON C. ENGLAND, JR
SENIOR UNITED STATES DISTRICT JUDGE